UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | 2:18-cr-00041-JMS-CMM |
| | ) | |
| ANTHONY BURNETT (01), | ) | |
| *Defendant.* | ) | |

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS

Presently pending before the Court is Defendant Anthony Burnett's Motion to Suppress Illegally Seized Evidence ("Motion to Suppress"). [Filing No. 43.] Mr. Burnett has been indicted on one count of possession with intent to distribute fifty grams or more of methamphetamine, [Filing No. 18], and the trial in this matter is set for August 5, 2019, [Filing No. 42 at 2]. Mr. Burnett seeks to suppress evidence obtained after what he contends was an unlawful search and seizure in violation of his Fourth Amendment rights. [Filing No. 43.] The Motion to Suppress is now ripe for the Court's review. For the reasons detailed herein, the Court **DENIES** Mr. Burnett's Motion to Suppress and his request for a hearing on the matter.[1]

---

[1] Although Mr. Burnett requested that this matter be set for an evidentiary suppression hearing, [Filing No. 43 at 3], the Court concludes that a hearing is unnecessary because the facts asserted in the parties' briefs regarding the traffic stop and search are not in dispute. *See United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) (holding that district courts are required to conduct hearings on a motion to suppress "when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion.")

# I.
## BACKGROUND[2]

On July 29, 2017, Mr. Burnett was driving his 1989 Ford F350 pickup truck when he passed Major Dwight Simmons of the Putnam County Sherriff's Office, who was working traffic enforcement on U.S. 40 and had his vehicle in a stationary position at the time. [Filing No. 1 at 4.] As Mr. Burnett's vehicle passed by, Major Simmons noticed that the exhaust on the vehicle was extremely loud, and that he could hear it despite Major Simmons's vehicle's windows being rolled up and the radio playing. [Filing No. 1 at 4.] Major Simmons pulled his vehicle onto the highway to pursue Mr. Burnett for a potential violation of Indiana Code §§ 9-19-8-2 and 9-19-8-3.[3] [Filing No. 1 at 4.] When Major Simmons activated his vehicle's emergency lights, Mr. Burnett continued to drive until he reached the next crossroad. [Filing No. 1 at 4.] As Mr. Burnett was pulling his vehicle over to the shoulder, Major Simmons observed Mr. Burnett "leaning to the right as if he was using his right arm to conceal something within the passenger compartment," and the car swerved across the fog line briefly as Mr. Burnett made this leaning motion. [Filing No. 1 at 4.] When Mr. Burnett brought his vehicle to a stop, Major Simmons approached the passenger side window and saw that Mr. Burnett was the only person in the car. [Filing No. 1 at 4.] Major Simmons recognized Mr. Burnett and knew from conversations with other officers that Mr. Burnett had had previous contact with law enforcement, including an arrest in January 2017

---

[2] Because facts presented in the parties' briefs are not in dispute, the Court will base its recitation of the relevant facts on those included in the Affidavit in Support of the Criminal Complaint, [Filing No. 1].

[3] Indiana Code § 9-19-8-2 provides: "A motor vehicle must be equipped with a muffler or other noise dissipative device that meets the following conditions: (1) Is in good working order. (2) Is in constant operation to prevent excessive noise."

Indiana Code § 9-19-8-3 states: "A motor vehicle must be equipped with a muffler free from the following visually discernible conditions: (1) Exhaust gas leaks. (2) Alteration of muffler elements. (3) Deterioration of muffler elements."

for possession of methamphetamine and possession of marijuana. [Filing No. 1 at 4-5.] When Major Simmons advised Mr. Burnett that he had pulled him over for a loud exhaust, Mr. Burnett responded that he had the exhaust "running straight down towards the ground." [Filing No. 1 at 5.] Mr. Burnett provided Major Simmons with his driver's license and several other documents; however, none of the documents provided were Mr. Burnett's registration. [Filing No. 1 at 5.] While Mr. Burnett continued looking for his registration in the vehicle, Major Simmons asked Mr. Burnett if he had automobile insurance. [Filing No. 1 at 5.] Mr. Burnett responded that he did have insurance, but he could not provide proof of insurance. [Filing No. 1 at 5.] Mr. Burnett advised that his insurance was through "the Glen Furr Agency," but he could not name the company that actually issued the insurance policy. [Filing No. 1 at 5.] Major Simmons found this lack of information suspicious, and it made him think that Mr. Burnett did not have insurance. [Filing No. 1 at 5.] Major Simmons also noticed that Mr. Burnett was becoming overly nervous, as evidenced by his shaking hands and rapid, labored breathing. [Filing No. 1 at 5.]

Based on Mr. Burnett's behavior, Major Simmons requested that Deputy Jacob Harrington (also patrolling U.S. 40) report to the scene to assist him. [Filing No. 1 at 5.] While Deputy Harrington was traveling to the scene, Major Simmons returned to his patrol car and began filling out a warning citation for the loud exhaust issue. [Filing No. 1 at 6.] At this time, Mr. Burnett had located his registration and began waving it out of the driver's side window of his vehicle. [Filing No. 1 at 6.] Major Simmons walked to Mr. Burnett's vehicle to retrieve the registration. [Filing No. 1 at 6.] Mr. Burnett continued searching for his proof of insurance, but he could not find it. [Filing No. 1 at 6.]

Major Simmons continued to fill out the citation form until Deputy Harrington arrived. [Filing No. 1 at 6.] Eleven minutes had elapsed between the time Mr. Burnett's vehicle was

stopped and the time Deputy Harrington arrived at the scene. [Filing No. 1 at 4; Filing No. 1 at 6.] Major Simmons requested that Deputy Harrington complete the citation for lack of insurance, and he advised him that he would ask Mr. Burnett to move to the rear of the vehicle with Deputy Harrington. [Filing No. 1 at 6.]

Major Simmons asked Mr. Burnett to step out of the vehicle, explaining that Mr. Burnett would be receiving a citation for his failure to provide proof of insurance. [Filing No. 1 at 6.] As Deputy Harrington was seating Mr. Burnett in the back of the patrol vehicle, Major Simmons advised Mr. Burnett that he would be using his narcotics-detection K-9 on Mr. Burnett's vehicle because Mr. Simmons had a pending drug case. [Filing No. 1 at 6.] Major Simmons asked Mr. Burnett if anything illegal was present in Mr. Burnett's vehicle, and Mr. Burnett broke eye contact with Major Simmons before he answered, "No." [Filing No. 1 at 6.]

The narcotics-detection K-9, which was certified in 2009 and has been recertified on an annual basis, was used to detect the odors of various substances including methamphetamine. [Filing No. 1 at 6.] Major Simmons led the K-9 around the driver's side of the vehicle, and the K-9 stopped near the rear tires and bed area and appeared to be detecting a narcotic odor. [Filing No. 1 at 7]. The K-9 also sniffed near the bumper and sat down as a signal that he detected the odor of a narcotic. [Filing No. 1 at 7.] Then the K-9 signaled again at the front and rear doors of the vehicle. [Filing No. 1 at 7.] Based on the signal from the K-9, Major Simmons then conducted an exterior and interior search of Mr. Burnett's vehicle. [Filing No. 1 at 7.] Inside the vehicle, Major Simmons saw a large Styrofoam cup sitting on the center hump of the floorboard of the car. [Filing No. 1 at 7.] When Major Simmons picked up the cup, he noticed that it seemed heavier than it should be. [Filing No. 1 at 7.] Major Simmons removed the lid on the cup and saw a plastic bag with a crystal-like substance inside, which Major Simmons suspected was methamphetamine, and

which later tested positive as methamphetamine. [Filing No. 1 at 7.] Major Simmons asked Mr. Burnett to step out of the patrol car, and Major Simmons then put Mr. Burnett in mechanical wrist restraints and issued him a Miranda warning. [Filing No. 1 at 7.] After confirming that he understood his rights, Mr. Burnett declined to make any statements about the crystal-like substance. [Filing No. 1 at 7-8.] Deputy Harrington remained at the scene waiting for Mr. Burnett's vehicle to be impounded, and Major Simmons drove Mr. Burnett to the Putnam County Jail. [Filing No. 1 at 8.]

Two days later, Major Simmons visited two gas stations in the area to attempt to obtain surveillance video of Mr. Burnett purchasing the soda in the large Styrofoam cup that was found during the search of Mr. Burnett's vehicle. [Filing No. 1 at 8]. Major Simmons was able to retrieve video evidence of Mr. Burnett making such a purchase just twenty-five minutes prior to Major Simmons pulling Mr. Burnett over on July 29, 2017. [Filing No. 1 at 8.]

Major Simmons later investigated the exhaust system of Mr. Burnett's vehicle and discovered that the tail pipe ended just behind the cab rather than extending to the end of the truck bed, and the exhaust did not have a muffler. [Filing No. 1 at 9.] Major Simmons concluded that the exhaust system of Mr. Burnett's vehicle would not prevent excessive noise. [Filing No. 1 at 9.]

On December 19, 2018, Mr. Burnett was indicted for one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). [Filing No. 18 at 1.] On February 4, 2019, Mr. Burnett filed a Motion to Suppress Illegally Seized Evidence, [Filing No. 43], which is now fully briefed and is ripe for the Court's review.

## II.
### DISCUSSION

Mr. Burnett argues that all evidence that was seized after the allegedly unlawful stop should be suppressed because: (1) he should not have been stopped in the first place because his vehicle fell into an exception to the loud exhaust statutes, and (2) Major Simmons lacked probable cause when he searched Mr. Burnett's vehicle. Mr. Burnett cites Indiana Code § 9-19-8-1, which states that the loud exhaust statutes (I.C. § 9-19-8-2 and I.C. § 9-19-8-3) do not apply to "a vehicle that is at least twenty-five (25) years old." [Filing No. 43 at 1.] Mr. Burnett argues that because his vehicle was more than twenty-five years old at the time of the stop, he fell into this exception and therefore there was no statutory authority to support the stop. [Filing No. 43 at 2.] Mr. Burnett also argues that Major Simmons lacked probable cause for the search because his stated reasons for searching Mr. Burnett's vehicle with the K-9 were "vague" and based on "hunches" and "vague conclusions." [Filing No. 43 at 2.]

The Government responds by asserting that Major Simmons had probable cause to believe a traffic violation had occurred because he could hear what he reasonably believed to be an extremely loud exhaust on a vehicle passing him, and he could hear it even though his vehicle's windows were rolled up and the radio was playing. [Filing No. 52 at 8.] The Government argues that it is inconsequential whether Mr. Burnett's vehicle would fall into the exception of Indiana Code § 9-19-8-1 because: (1) there is nothing in the record showing that, at the time of the stop, Major Simmons knew Mr. Burnett's vehicle may have fallen into the exception (and, in fact, he admits that he was not aware of the exception), and (2) it is unrealistic to expect Major Simmons to be able to correctly identify the year of Mr. Burnett's vehicle by sight alone. [Filing No. 52 at 10; Filing No. 52 at 13.] The Government asserts that information learned after the stop occurred—i.e., that the exception existed and that Mr. Burnett's vehicle was a 1989 model—does

not have an effect on whether Major Simmons initially had probable cause to stop Mr. Burnett. [Filing No. 52 at 12.] The Government also argues that the traffic stop was not unlawful because it was not prolonged by the use of the K-9. [Filing No. 52 at 14.] The Government notes that Deputy Harrington was still filling out the warning citation forms when the K-9 open-air sniff was conducted so the open-air sniff did not prolong the traffic stop. [Filing No. 52 at 15.] The Government contends that Mr. Burnett would not have been able to leave the scene in any event because he did not have proof of insurance. [Filing No. 52 at 15.] The Government further argues that even if the stop were somewhat prolonged, Major Simmons had reasonable suspicion to conduct the dog sniff due to: (1) Mr. Burnett's criminal history; (2) Mr. Burnett's failure to immediately pull over when Major Simmons activated the emergency lights; (3) Mr. Burnett's furtive movements that appeared to be linked to concealing something; (4) Mr. Burnett's swerving before pulling over; (5) Mr. Burnett's nervous behavior such as the shaking hands and labored breathing; and, (6) Mr. Burnett's break in eye contact before telling Major Simmons "no" when asked if there was anything illegal in Mr. Burnett's vehicle. [Filing No. 52 at 16-17.] The Government further argues that, in any event, the evidence in the vehicle would have inevitably been discovered when Major Simmons and/or other officers went through the standard inventory procedures of cataloguing all items in an impounded vehicle's interior, and the inevitable discovery doctrine applies here as an exception to the exclusionary rule. [Filing No. 52 at 17.] Finally, the Government argues that even if the Court finds that Major Simmons's conduct was unconstitutional, the exclusion of the evidence would not be appropriate in this situation because Major Simmons competently performed his duties in good faith, and his conduct is not the type that needs to be deterred by the exclusionary rule. [Filing No. 52 at 19-21.]

In his reply brief, Mr. Burnett asserts that Major Simmons should have been aware of the relevant law related to vehicle exhaust noise, and that the legal basis Major Simmons cited for the stop was incomplete and incorrect. [Filing No. 53 at 1.] Mr. Burnett also argues that when Major Simmons noted "furtive gestures" Mr. Burnett allegedly made, Major Simmons was making assumptions that were not supported by reasonable information, because Mr. Burton was not attempting to conceal something, but was instead reaching for the glove compartment for the documents needed during a traffic stop. [Filing No. 53 at 1.] Mr. Burnett argues that the completion of the warning citation could have taken just a few minutes, but it was unreasonably prolonged while Major Simmons used the drug-sniffing dog without probable cause for such a search. [Filing No. 53 at 3.]

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. Generally, a warrantless search or seizure in the absence of probable cause is unreasonable. *United States v. Slone*, 636 F.3d 845, 848-49 (7th Cir. 2011). "[T]he decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *U.S. v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (internal citations and quotations omitted). That inquiry is an objective one. *Whren v. U.S.*, 517 U.S. 806, 813; *Scott v. United States*, 436 U.S. 128, 138 (1978) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."). The probable-cause inquiry has two steps: first, determine what facts the officer knew

at the time of the traffic stop, and, second, "decide whether a reasonable officer could conclude that these facts amount to a violation of the law." *United States v. Garcia–Garcia*, 633 F.3d 608, 613 (7th Cir. 2011). In determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). "[T]he Fourth Amendment tolerate[s] certain unrelated investigations that d[o] not lengthen the roadside detention." *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015). However, "a traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket." *Id.* at 1614-15 (internal quotation marks omitted). When police conduct an unreasonable search or seizure, the exclusionary rule usually vindicates the Fourth Amendment's protections by keeping out the unlawfully obtained evidence. *Id.*

Mr. Burnett first challenges Major Simmons's decision to initiate the traffic stop, arguing that because his vehicle is more than twenty-five years old and therefore falls into the exception to Indiana Code §§ 9-19-8-2 and 9-19-8-3 (the loud exhaust statutes), Major Simmons should not have pulled him over for the loud exhaust. [Filing No. 43 at 1.] Although the Government has noted that Major Simmons was not aware of the exception found in Indiana Code § 9-19-8-1 at the time of the stop, the Government argues that the stop was still reasonable because Major Simmons believed that Mr. Burnett had violated a traffic law due to the fact that he could hear the loud exhaust despite his vehicle's windows being rolled up and the radio playing. [Filing No. 52 at 8.] "The Fourth Amendment requires searches and seizures to be reasonable; it does not demand that police and other public officials resolve all possible exceptions before approaching a stopped car and asking the first question." *U.S. v. Johnson*, 874 F.3d 571, 573 (7th Cir. 2017). "Whether

the driver actually committed a traffic infraction is irrelevant for Fourth Amendment purposes so long as there was an objective basis for a reasonable belief he did." *U.S. v. Lewis*, No. 17-3592, 2019 WL 1467094, at *4 (7th Cir. 2019). Given that the excessive noise from Mr. Burnett's exhaust system is undisputed, the Court finds that Major Simmons did not act unlawfully when he initiated the traffic stop, because he reasonably believed that a traffic violation had occurred. As the Government points out, Mr. Burnett's argument regarding the twenty-five-year-old model exception may provide Mr. Burnett with a defense to the loud exhaust citation; however, the fact that Mr. Burnet's vehicle may fall within the exception does not negate the fact that Major Simmons had probable cause to initiate the traffic stop. The facts Major Simmons had—such as the auditory observation that the exhaust of Mr. Burnett's vehicle was very loud as it passed by— provided Major Simmons with a reasonable basis to believe that Mr. Burnett had violated a traffic law. Therefore, the initiation of the traffic stop was not unlawful.

Mr. Burnett next challenges the search conducted following the use of the narcotics-detection K-9. To the extent this is a challenge to the duration of the stop, the Supreme Court has held that "[a]n officer may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 135 S.Ct. at 1615-16. On the issue of the duration of the traffic stop, the Court finds no constitutional violation. The Government asserts that the duration of time from when Major Simmons stopped Mr. Burnett until the time that Deputy Harrington arrived was approximately eleven minutes. [Filing No. 1 at 4; Filing No. 1 at 6.] Moreover, by the time that the K-9 started the narcotics-detection sniff, Deputy Harrington was still in the process of writing the citation for no insurance. [Filing No. 1 at 6.] The
- 10 -

Court finds nothing improper about Major Simmons's protocol because the K-9 sniff did not unreasonably extend the duration of the traffic stop.

To the extent that Mr. Burnett challenges the basis for Major Simmons's search of the vehicle, the Court must determine whether Major Simmons had probable cause to search the interior of Mr. Burnett's vehicle. Faced with a challenge to a warrantless search, it is the Government's burden to prove that the search of Mr. Burnett's pickup truck was reasonable. *Coolidge v. New Hampshire*, 403 U.S. 443, 445 (1971). The Government must show by a preponderance of the evidence that the search fell within one of the recognized exceptions to the warrant requirement. *United States v. Zahursky*, 580 F.3d 515, 521 (7th Cir. 2009); *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). One such exceptions is the automobile exception first recognized in *Carroll v. United States*, 267 U.S. 132 (1925). Under this exception, where there is probable cause to believe that a vehicle contains contraband or evidence of a crime, law enforcement may conduct a warrantless search of the vehicle. *Zahursky*, 580 F.3d at 521; *Carroll*, 267 U.S. at 153-56; *see also United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005). "Probable cause" exists where, based on a totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Zahursky*, 580 F.3d at 521; *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Scott*, 516 F.3d 587, 589 (7th Cir. 2008). It requires a probability, not absolute certainty, that contraband or evidence of a crime will be found. *Zahursky*, 580 F.3d at 521 (citations omitted). In determining whether there is probable cause to search, law enforcement officers may draw reasonable inferences from the facts based on their training and experience. *Id.*; *see, e.g., United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006); *United States v. Farmer*, 543 F.3d 363, 377 (7th Cir. 2008). The mere action of conducting a dog sniff does not infringe upon a person's Fourth Amendment rights. *See Illinois v. Caballes*,

543 U.S. 405, 410 (2005) ("A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment."). However, a dog's positive hit during the sniff can provide probable cause for a search. *See Florida v. Harris*, 568 U.S. 237, 246-47 (2013) (holding that a dog with a satisfactory performance in a certification program provides a "sufficient reason to trust his alert" and "the dog's alert provides probable cause to search"); *see also U.S. v. Wyatt*, 133 Fed. Appx. 310 (7th Cir. 2005) (Police dog's positive alerts for drugs while walking around the recreational vehicle (RV) in which the defendant was stopped for speeding provided probable cause to search the RV, where the record established that the dog was well-trained, having completed a 14-week training course and a periodic refresher course).

The Court finds that Major Simmons's search of Mr. Burnett's vehicle was constitutional. After he stopped Mr. Burnett and Deputy Harrington arrived, Major Simmons took his K-9 around Mr. Burnett's vehicle to conduct a narcotics-detection sniff of the vehicle. [Filing No. 1 at 7]. When the K-9 went around the driver's side of the vehicle, he stopped near the rear tires and bed area and appeared to be detecting a narcotic odor. [Filing No. 1 at 7]. The K-9 also sniffed near the bumper and sat down as a signal that he detected the odor of a narcotic. [Filing No. 1 at 7.] Then the K-9 signaled again at the front and rear doors of the vehicle. [Filing No. 1 at 7.] Based on these positive alerts made by a certified narcotics-detection dog, Major Simmons decided to conduct the search. As the Court previously stated above, a certified "dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246-47 (2013). Accordingly, Mr. Burnett's challenge to the validity of Major Simmons's search of the vehicle is without merit.

## III.
### CONCLUSION

The Court finds that Major Simmons acted lawfully when he initiated the traffic stop and when he conducted the search of the vehicle following the positive narcotics-detection sniff. Accordingly, the Court **DENIES** Mr. Burnett's Motion to Suppress, [43].

Date: 5/23/2019

*[signature]*

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record.**